RECEIVED

MAY 19 2010 *wh*

TONY R. MOORE, CLERK
WESTERN DISTRICT OF LOUISIANA
ALEXANDRIA, LOUISIANA

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

ALEXANDRIA DIVISION

WASHINGTON McCASKILL (#28453-034)     CIVIL ACTION NO. 1:09-cv-2149

VS.                                   SECTION P

                                      JUDGE DEE D. DRELL

W.RYDER, ET AL.                       MAGISTRATE JUDGE JAMES D. KIRK

---

**IMPORTANT NOTICE**: Courtesy copies of documents you file
should **NOT** be provided to any judge.
All communications with the court shall **ONLY** be
through documents filed with the Clerk of Court.

---

### REPORT AND RECOMMENDATION

*Pro se* plaintiff Washington McCaskill, proceeding *in forma pauperis*, filed this <u>Bivens</u> civil rights complaint[1] on December 14, 2009. Plaintiff is an inmate in the custody of the Federal Bureau of Prisons (BOP); he is incarcerated at the United States Penitentiary, Pollock, Louisiana (USP-POL) and he complains that he was the victim of excessive force, retaliation, and the denial of prompt medical care. He sued W. Ryder, Warden Keffer, Lt. Crittle, L. Longmore, and Willie Vasquez. He prayed that his assailant be terminated from his employment and for an unspecified amount of

---

[1] In <u>Bivens v. Six Unknown Agents of the Federal Bureau of Narcotics</u>, 403 U.S. 388 (1971), the Supreme Court recognized that certain circumstances may give rise to a private cause of action against federal officers that is comparable to the statutory cause of action permitted against state officials by 42 U.S.C. §1983.

money damages. This matter has been referred to the undersigned for review, report, and recommendation in accordance with the provisions of 28 U.S.C. §636 and the standing orders of the Court. For the following reasons it is recommended that the complaint be **DISMISSED WITH PREJUDICE**.

### *Background*

### 1. *Doc. #1 Original Pleading*

In his original, non-conforming pleading, Plaintiff claimed that on July 23, 2009 his Counselor, W. Ryder became enraged and attacked Plaintiff while he was being escorted to his cell in restraints. According to plaintiff Ryder choked him, pulled his hair, then administered several blows to plaintiff's face with his fist.  Ryder continued to assault him when he fell to the ground and the attack resulted in unspecified injuries to the back of plaintiff's head.

Plaintiff also claimed that he was disciplined thereafter and lost good time credits, visiting and commissary privileges and was denied proper medical treatment all because Ryder filed a false incident report. Plaintiff implied that Ryder "retaliated" against him because plaintiff is an African-American and a Muslim.

### 2. *Doc. #4 – Amended Complaint*

On January 19, 2010 plaintiff amended his complaint by submitting it on the form provided to prisoners filing civil rights complaints in this district. According to the statement of facts

2

plaintiff was called out of his cell for an unknown reason and thereafter, he was the victim of an "ambush." He claimed that Warden Keffer and others were present when he was attacked by Ryder, but they soon fled the SHU upon observing plaintiff's injuries and upon hearing his demand to report the assault to O.I.G., Internal Affairs, or the F.B.I. According to plaintiff, once the administration was made aware of plaintiff's intentions, his privileges were taken away and his medical care claims were ignored.

As of January 19, 2010, the date he filed the amended complaint, plaintiff complained that his leg was injured in the affray and was still swollen; his requests for diagnostics and treatment have been ignored.  Plaintiff prayed for Ryder's discharge and for money damages for the violations of his Constitutional rights, including the loss of good time credits.

### 3. Doc. #5 Request for Discovery

On January 20, 2010 plaintiff filed a pleading entitled "Memorandum of Points and Authorities." Upon closer inspection, it appears that plaintiff sought the discovery of the defendants' personnel files to demonstrate Ryder's bias toward African American and Muslim inmates.

### 4. Doc. #10 Letter to F.B.I.

On February 16, 2010 plaintiff filed what purports to be a letter directed to the F.B.I.  According to the letter, plaintiff

3

was confined in the SHU at USP-POL "...pending F.B.I. referral..." when he was assaulted by officers. Plaintiff then described the events of July 23, 2009 as follows:

> So I had a lot of issues I was addressing before I was in SHU, as well as old DHO Reports, and Incident Reports I requested from Ms. Longmore. So on 7-23-09 she sent for me. She tried to hand me the BP8 I wrote up on her back and she had several other documents that W. Ryder was looking over. So I asked Ms. Longmore to do her job and don't call me out of my cell for that etc. Well Ryder asked me why I'm filing on these DHO Reports so late they'll be denied so I told him I'm not speaking with you I'm talking to Ms. Longmore. So Ryder became disrespectful and we had some words. So SHU Officer Rhodes came in the room to escort me to my cell that's when W. Ryder put his hands around my neck so I tried to flee out of the small room but was being pulled back by my hair and punched in the face while Officer Rhodes held me back. Once we made it to the hallway Ryder continued to assault me while I was on the ground face down helpless and unable to protect myself. SIS Crittle rushed over helped me up and I said screw this I want to speak with somebody like OIG, IA, or FBI man this man assaulted me. My mouth was busted also the back of my head at the time, so once I glanced to my left I seen the Head Administration, Warden, Captain, etc. So I said I want to speak with OIG or the FBI asap and SIS Let. Crittle and others slammed me on the ground again. I yelled and screamed I was assaulted but staff kept applying pressure on my legs.

Plaintiff also complained that all his legal mail and complaints were stolen from him while he was in staff custody on January 16, 2009 at some private prison in Texas.

## 5. Doc. #11 Second Amended Complaint

On February 17, 2010 plaintiff was directed to amend his complaint to provide additional details. [Doc. #9] He complied with the order and filed an amended complaint on March 15, 2010.

4

Plaintiff again filed a detailed description of the events that transpired on July 23, 2009. Plaintiff again alleged,

> On July 23, 2009, while in the midst of filing numerous institutional grievances appealing incident reports and complaining of administration misconduct amongst numerous staff and administrators, Mrs. Longmore and Mr. Ryder summoned me from my housing cell to process some of my grievances although only Mrs. Longmore is my counselor. Counselor Mr. Ryder began to start to harass me for filing grievances and became disrespectful and started having words with me. Officer Rhodes came in the room to escort me to my cell that's when Mr. Ryder attacked me by putting his hands around my neck and started choking me. I could not breath and attempted to flee out of the room for my own safety but I was pulled back by my hair and punched in the fact. I eventually made it to the hallway where Mr. Ryder continued to assault me. Lt. Crittle came down the hallway and when I mentioned i wanted to speak to the O.I.G., I.A., or F.B.I., Lt. Crittle began to assault me with other unknown officers while the Warden J. Keffer and other  administrators stood and watched but failed to protect me.

Plaintiff then complained that defendant Vasquez refused to provide medical assistance and treatment for unspecified injuries allegedly sustained by plaintiff in the affray.

Plaintiff also provided copies of his administrative remedies procedure grievances and the responses made at the local, regional, and national levels, along with copies of the Disciplinary Hearing reports and supporting documents. The most significant and probative documents include the Incident Report (charging plaintiff with Disciplinary Code Violation 224, Assaulting a Person); the Disciplinary Hearing Officer's (DHO) Report showing that plaintiff was found guilty of the assault at a DHO hearing conducted on

5

August 12, 2009 which resulted in, among other things, the forfeiture of good time credits; and, the rejection of plaintiff's appeal at the BOP's Regional Level on October 19, 2009. [See Doc. #11, pp. 10 and 16-24]

### 6. Doc. #13 *Administrative Tort Claim*

On March 25, 2010 plaintiff filed a copy of the BOP's rejection of his administrative tort claims as follows, "An investigation of your claim was conducted and there is no evidence that you were assaulted by staff on July 23, 2009. In fact, BOP records reveal that an incident report was written charging you with assault on staff which was upheld by the Disciplinary Hearing Officer (DHO) at the hearing on August 12, 2009."

### 7. Doc. #14 *Access to Law Library*

On March 31, 2010 plaintiff submitted a letter complaining that he is unable to conduct "proper research or access to the law library." He also complained about other conditions and circumstances encountered during his confinement at the SHU.

### Law and Analysis

### 1. Screening

Plaintiff has been allowed to proceed *in forma pauperis*. When a prisoner sues an officer or employee of a governmental entity in a civil rights complaint, the court is obliged to evaluate the complaint and dismiss it without service of process, if it is

6

frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A; 28 U.S.C.§1915(e)(2). Ali v. Higgs, 892 F.2d 438, 440 (5th Cir.1990).

A claim is frivolous if it lacks an arguable basis in law or in fact. Booker v. Koonce, 2 F.3d 114, 115 (5th Cir.1993); see, Denton v. Hernandez, 504 U.S. 25, 112 S.Ct. 1728, 1733, 118 L.Ed.2d 340 (1992). A civil rights complaint fails to state a claim upon which relief can be granted if it appears that no relief could be granted under any set of facts that could be proven consistent with the allegations of the complaint. Of course, in making this determination, the court must assume that all of the plaintiff's factual allegations are true. Bradley v. Puckett, 157 F.3d 1022, 1025 (5th Cir.1998).

A hearing need not be conducted for every pro se complaint. Wilson v. Barrientos, 926 F.2d 480, 483 n. 4 (5th Cir.1991). A district court may dismiss a prisoner's civil rights complaint as frivolous based upon the complaint and exhibits alone. Green v. McKaskle, 788 F.2d 1116, 1120 (5th Cir.1986).

District courts must construe in forma pauperis complaints liberally, but, they are given broad discretion in determining when such complaints are frivolous. Macias v. Raul A. (Unknown)

Badge No. 153, 23 F.3d 94, 97 (5th Cir.1994).

A civil rights plaintiff must support his claims with specific facts demonstrating a constitutional deprivation and may not simply rely on conclusory allegations. Schultea v. Wood, 47 F.3d 1427, 1433 (5th Cir.1995). Nevertheless, a district court is bound by the allegations in a plaintiff's complaint and is "not free to speculate that the plaintiff 'might' be able to state a claim if given yet another opportunity to add more facts to the complaint." Macias v. Raul A. (Unknown) Badge No. 153, 23 F.3d at 97.

Plaintiff's complaints and exhibits provide the facts necessary to conduct and conclude a preliminary screening pursuant to §1915. No further amendment or supplementation of the record is necessary.

## 2. Heck/Balisok Considerations

Plaintiff seeks monetary relief "... for violating [his] Constitutional rights and fabricating reports that's caused a lot of stress, taking good conduct days etc." He has not specifically requested reinstatement of the good time credits that were forfeited as a result of his DHO conviction.[2] However, a claim for

---

[2] Of course, plaintiff may not challenge his loss of good time credits in a civil rights action. See Clarke v. Stalder, 154 F.3d 186, 189 (5th Cir.1998) (en banc). The restoration of forfeited good time credits must be pursued in a habeas corpus action filed pursuant to 28 U.S.C. §2241. See Preiser v. Rodriquez, 411 U.S. 475, 500, 93 S.Ct. 1827, 36 L.Ed.2d 439 (1973).

declaratory judgment or damages arising from the loss of good time credits is not cognizable until a prisoner can show that the challenged disciplinary action has been reversed on direct appeal, expunged by executive order, declared invalid by an authorized tribunal, or called into question by a federal court's issuance of a writ of *habeas corpus*. See <u>Heck v. Humphrey</u>, 512 U.S. 477, 486-87, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994) (When a prisoner seeks damages in a civil rights suit, the district court must consider whether judgment in favor of prisoner would necessarily imply the invalidity of his conviction or sentence; if so, the complaint must be dismissed unless prisoner can demonstrate that conviction or sentence has already been invalidated.) Plaintiff claims that the prison disciplinary charges filed against him were fabricated and are false. He also claims that excessive force was used against him on the date in question.

The Supreme Court extended <u>Heck</u> to prison disciplinary cases in <u>Edwards v. Balisok</u>, 520 U.S. 641, 648, 117 S.Ct. 1584, 137 L.Ed.2d 906 (1997)(A "conviction" for purposes of the <u>Heck</u> analysis includes a ruling in a prison disciplinary proceeding that results in a change in the prisoner's sentence, including

---

A *habeas corpus* action must be filed in the district court where the prisoner is in custody, and, the proper respondent in such action is the person exercising custody over the prisoner. See 28 U.S.C. §§ 2241(d) and 2243.

loss of "good time" credits.) A prisoner's civil rights "claim for declaratory relief and money damages, based on allegations of deceit and bias on the part of the decisionmaker that necessarily imply the invalidity of the punishment imposed, is not cognizable under

§ 1983." *Id.* In light of <u>Edwards v. Balisok</u>, the Fifth Circuit has held that a prisoner may not bring a civil rights lawsuit for damages about an excessive use of force incident where a judgment in his favor would necessarily imply the invalidity of his disciplinary case unless he can demonstrate that the disciplinary case has been reversed or otherwise invalidated. See <u>Hainze v. Richards</u>, 207 F.3d 795 (5th Cir. 2000), citing <u>Sappington v. Bartee</u>, 195 F.3d 234 (5th Cir.1999)(An excessive force claim under section 1983 is barred as a matter of law if brought by an individual convicted of aggravated assault related to the same events.); <u>Donnelly v. Darby</u>, 81 Fed. Appx. 823 (5th Cir.2003). Plaintiff's disciplinary case involves factors that must be addressed while considering an excessive use of force claim under <u>Hudson v. McMillian</u>, 962 F.2d 522, 523 (5th Cir.1992). According to the Incident Report and the DHO's findings, plaintiff was the aggressor and the force used to subdue him was clearly justified. Thus, plaintiff's behavior led to the escalation of the incident,

10

and ultimately the use of force against him. A judgment in his favor in this civil rights lawsuit would necessarily call into question the validity of the DHO's findings of fact and the DHO conviction which resulted in the loss of good time credits. [3]

---

[3] According to the Incident Report, on July 23, 2009, plaintiff, "... cuffed from behind became enraged when he was told that he was being returned to his cell for behaving inappropriately by yelling at the Unit Team. [He] started yelling and approached Unit Team staff in an aggressive manner. The SHU officer then started to pull the inmate away from the Unit Team to escort him back to his cell when [he] approached and assaulted me by kicking me in the stomach area. The SHU Officer and myself tried to restrain the inmate by giving him voice commands to stop but the inmate kept kicking and using his head and the trunk of his body as a weapon by throwing himself towards me and the SHU Officer. At that time the B4 Counselor ran out the door to get assistance from other SHU Officers in the area. Staff and SHU Officers came in and assisted with restraining the inmate. The inmate continued his aggressive behavior toward staff by kicking, yelling and refusing to obey all commands from SHU staff. Again, SHU staff attempted to restrain the inmate from hurting staff and himself by placing the inmate down on the ground and cuffing the inmate with leg restraints. After voice commands from the SHU Lieutenant to calm down, the inmate finally quit fighting and the SHU Officers slowly picked up the inmate from the ground and escorted the inmate to a secure cell." [Doc. #11, p. 16]

Likewise, the DHO made the following findings of fact following the DHO hearing, "The DHO finds that on July 23, 2009, at or about 2:00 p.m. you committed the prohibited act of Assault, Code 224. The DHO relied on the account of the reporting staff member who attested that Inmate McCaskill, Washington, #28453-034 was instructed to return to his cell, when he became enraged and hostile, yelling and approaching staff in an aggressive manner. Another staff member separated him from the Unit Team and while escorting Inmate McCaskill to his cell, he approached another staff member and assaulted him (staff) by kicking him (staff) in the stomach. Staff ordered Inmate McCaskill to cease, but he continued to kick and head butt staff. Additional staff responded and attempted to restrain Inmate McCaskill, but he continued to kick, yell and refused to cease his assault on staff. An immediate use of force was used to place leg restraints on Inmate McCaskill in an attempt to regain control. Inmate McCaskill was escorted to his cell.

The DHO believes you committed the prohibited act of Code 224. The decision was based on the account of the reporting staff member who stated you assaulted another staff. Greater weight was placed with staffs' statements rather than your claim staff assaulted you. You have a history of staff assault and making allegations of staff misconduct." [Doc. #11, p. 23]

Since plaintiff has not shown that his disciplinary conviction has been reversed, expunged, declared invalid, or called into question, his claims for money damages must be dismissed with prejudice as frivolous. Johnson v. McElveen, 101 F.3d 423, 424 (5th Cir.1996).

### 3. Medical Care

Plaintiff also complained that he was denied medical care for injuries he sustained in the encounter.

To state a cause of action for inadequate medical care, a prisoner needs to show deliberate indifference to a serious medical need, which constitutes the unnecessary and wanton infliction of pain that is proscribed by the Eighth Amendment. Estelle v. Gamble, 429 U.S. 97, 104, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976).

A delay in medical care can only amount to an Eighth Amendment violation if there has been a deliberate indifference, resulting in substantial harm. Mendoza v. Lynaugh, 989 F.2d 191, 195 (5th Cir.1993) (emphasis supplied).

Plaintiff was specifically directed to provide "a description of the alleged injury sustained as a result of the alleged violation." [Doc. #9, p. 3] However, in his amended complaint he alleged only,

12

Mr. Willie Vasquez violated and continues to violate
plaintiff's Eighth Amendment rights to provide plaintiff
with medical care for all of the conditions plaintiff
suffered from the above mentioned assault of July 23,
2009. Plaintiff has continuously sought medical
attention since the day of the assault however, although
plaintiff was initially screened after the assault
plaintiff has filed numerous sick call slips to receive
medical attention but Mr. Willie Vasquez, plaintiff's
medical provider refuses to provide proper medical
attention. Plaintiff can not provide copies of medical
request because the medical records office will not
release plaintiff's medical records unless subpoened
[sic] by the courts. Plaintiff continues to suffer from
numerous medical conditions. Pain in the head, [ribs],
back etc. [Doc. #11, pp. 4-5]

Plaintiff has not demonstrated that the delay, if any, in
providing him medical care has resulted in substantial harm.
Indeed, plaintiff complains only of nonspecific pain in various
parts of his head, ribs, and back, but complained at the time of
the incident about pain in his leg.

Further, plaintiff now concedes that he was examined
immediately after the affray. Apparently, the medical
professionals who conducted the examination concluded that further
medical care was unnecessary. If that conclusion was erroneous,
plaintiff has, at worst, alleged negligence on the part of the
defendant, or a mere disagreement with diagnosis and treatment. In
either case, he cannot prevail since a complaint alleging
negligence in diagnosis or treatment does not state a

13

constitutional claim (See Stewart v. Murphy, 174 F.3d 530, 534 (5th Cir.1999)), and, a plaintiff's disagreement with diagnosis or treatment likewise does not establish deliberate indifference. (See Varnado v. Lynaugh, 920 F.2d 320, 321 (5th Cir.1991); Johnson v. Treen, 759 F.2d 1236, 1238 (5th Cir.1985)).

## 4. *Retaliation*

Plaintiff originally alleged that he was physically assaulted because he is an African American and a Muslim. He also claimed that the defendants retaliated against him for filing grievances and for threatening to complain to the FBI. He has elsewhere implied that the prison disciplinary charges filed against him were an act of retaliation. He was instructed to provide a more detailed statement to support his claims of retaliation. [Doc. #9, p. 4]

In his amended complaint, plaintiff alleged that the incident in question began when corrections officials harassed him for filing grievances. [Doc. #11, p. 2] He also alleged that when he advised the officers of his intention to contact the O.I.B., the I.A., or the F.B.I., "Lt. Crittle began to assault [him]..." [Doc. 11, p. 4]

It is well established that prison officials may not retaliate against an inmate because that inmate exercised a right guaranteed

14

to him under the constitution. Woods v. Smith, 60 F.3d 1161, 1164 (5th Cir.1995), cert. denied, 516 U.S. 1084, 116 S.Ct. 800, 133 L.Ed.2d 747 (1996). To state a claim of retaliation, a prisoner must allege facts which establish that (1) he exercised a specific constitutional right, (2) the defendant had the intent to retaliate against him for his exercise of that right, (3) a retaliatory adverse act occurred, and (4) causation. Causation requires a showing that "but for the retaliatory motive the complained of incident ... would not have occurred." Johnson v. Rodriquez, 110 F.3d 299, 310 (5th Cir.1997) (quoting Woods, 60 F.3d at 1166), cert. denied, 522 U.S. 995, 118 S.Ct. 559, 139 L.Ed.2d 400 (1997); McDonald v. Steward, 132 F.3d 225 (5 [th] Cir. 1998). "The inmate must allege more than his personal belief that he is the victim of retaliation." Jones v. Greninger, 188 F.3d 322, 324-25 (5th Cir.1999) "The inmate must produce direct evidence of motivation or, the more probable scenario, allege a chronology of events from which retaliation may plausibly be inferred." Id. (quoting Woods v. Smith, 60 F.3d 1161, 1166 (5th Cir.1995), cert. denied sub nom Palermo v. Woods, 516 U.S. 1084(1996))

While prison officials may not retaliate against or harass an inmate for exercising for complaining to those in authority about

15

a guard's misconduct, nevertheless, such claims of retaliation should be viewed carefully, since, "[t]he prospect of endless claims of retaliation on the part of inmates would disrupt prison officials in the discharge of their most basis duties." Woods v. Smith, 60 F.3d 1161, 1164 (5th Cir.1995). Further, "[c]laims of retaliation must ... be regarded with skepticism, lest federal courts embroil themselves in every disciplinary act that occurs in state penal institutions." Id. at 1166 (5th Cir.1995). Thus, a significant burden has been placed on plaintiffs asserting retaliation claims; or, as noted by the Fifth Circuit:

> To assure that prisoners do not inappropriately insulate themselves from disciplinary actions by drawing the shield of retaliation around them, trial courts must carefully scrutinize these claims. To state a claim of retaliation an inmate must allege the violation of a specific constitutional right and be prepared to establish that but for the retaliatory motive the complained of incident-such as the filing of disciplinary reports as in the case at bar-would not have occurred. This places a significant burden on the inmate. Mere conclusory allegations of retaliation will not [suffice]. The inmate must produce direct evidence of motivation or, the more probable, scenario, allege a chronology of events from which retaliation may be plausibly inferred. Id.

While the Fifth Circuit has declined to hold that a legitimate prison disciplinary report provides an absolute bar to a retaliation claim, the existence of such a report must be viewed

16

as probative and potent evidence as would be evidence of the number, nature, and disposition of prior retaliation complaints by the same inmate.[4] *Id.*

Here, plaintiff has alleged nothing more than a series of conclusory and self-serving allegations which are unsupported by

_____

[4] The available evidence suggests a pattern of behavior by the plaintiff. Plaintiff filed a civil action in the United States District Court for the Southern District of Texas in July 2008 in which he claimed, among other things, that he was "sadistically injured by federal officers" and "physically harmed" for "utilizing Administrative Remedies." See McCaskill v. Haynes, et al., No. 4:08-cv-2247 at Doc. #1. Evidence submitted by McCaskill in that proceeding included a copy of an incident report generated by S. Hernandez, a prison official at the Federal Detention Center, Houston, Texas on July 3, 2008. According to the report, "On July 3, 2008, at 3:07 p.m., DHO was conducting a hearing on inmate W. McCaskill #28453-034. McCaskill was yelling and being very loud. When the hearing was over McCaskill stood up and walked out of the office, still yelling at the DHO and Unit Team staff. I then took control of him to escort him to the holding cell. At this time, he made several attempts to turn around on me. He then made a twisting motion and hit me with his upper arm across the face. Counselor Jagow assisted me in placing McCaskill on the wall. McCaskill still attempted to get loose while kicking at us. At this time, Mr. Roberts assisted us in placing McCaskill on the floor to gain better control of him. Leg restraints were applied and Mr. McCaskill was placed in the holding cell. The Operations Lieutenant arrived on the scene, with other assisting staff. McCaskill was evaluated by medical and he was placed in his cell, without further incident." [*Id.*, at Doc. #11-1, p. 8]

Thereafter plaintiff submitted a FTCA claim to the Bureau of Prisons seeking $25,000 for personal injuries received in that incident. The letter denying his claim, dated January 23, 2009 stated, "You claim on July 3, 2008, staff at the Federal Detention Center (FDC) Houston, Texas, used excessive force while restraining you, resulting in lacerations, contusions, swelling and pain. You further contend staff failed to provide medical treatment for your injuries. An investigation into your claim revealed on July 3, 2008, you became disruptive during a disciplinary hearing. FDC Houston staff placed you on the floor to gain control after you resisted their attempts to escort you to the institution's Special Housing Units. Health Services staff subsequently assessed you and noted no blood, bruising, or broken skin was observed... There is no evidence to support your claim... Bureau of Prisons staff provided timely and appropriate medical treatment for your condition, including medication. Additionally, staff used an appropriate level of force in order to restrain you." [*Id.*, Doc. #18, pp. 1-2]

any probative evidence. He initially claimed that he was beaten because of his race and religion. In his amended complaint, he alleged that the incident in question began when corrections officials harassed him for filing grievances. [Doc. #11, p. 2] He also alleged that when he advised the officers of his intention to contact the O.I.B., the I.A., or the F.B.I., "Lt. Crittle began to assault [him]..." [Doc. 11, p. 4] It is abundantly clear that plaintiff has failed to allege facts sufficient to support his various retaliation claims. Indeed, the credible evidence, including the Incident Report and the DHO Report, clearly establishes that plaintiff was the aggressor and that the prison officials responded with appropriate force. Nothing herein suggests any retaliatory intent on the part of the defendants and therefore plaintiff's retaliation claim is frivolous.

## 5. *Access to Law Library*

Plaintiff also complained that he is unable to conduct "proper research or access to the law library." [Doc. #14] This claim implies a denial of access to courts claim.

"It has long been recognized that prisoners generally enjoy the constitutional right of access to the court." Jones v. Greninger, 188 F.3d 322, 325 (5th Cir.1999). See Bounds v. Smith, 430 U.S. 817, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977); *Johnson v.*

18

_Avery_, 393 U.S. 483, 89 S.Ct. 747, 21 L.Ed.2d 718 (1969). The right of access to the court is not unlimited, however, and includes "only a reasonable opportunity to file non-frivolous legal claims challenging [the prisoners'] convictions or conditions of confinement." _Id._ (citing Lewis v. Casey, 518 U.S. 343, 351, 116 S.Ct. 2174, 135 L.Ed.2d 606 (1996)). Put another way, "[w]hile the precise contours of a prisoner's right of access to the courts remain somewhat obscure, the Supreme Court has not extended this right to encompass more than the ability of an inmate to prepare and transmit a necessary legal document to a court." Brewer v. Wilkinson, 3 F.3d at 821; Lewis v. Casey, 518 U.S. at 351, 116 S.Ct. at 2179-81; Norton v. Dimazana, 122 F.3d at 290; and Eason v. Thaler, 73 F.3d 1322, 1329 (5th Cir.1996).

Finally, in order for plaintiff to state a claim that he was denied his constitutional right of access to the courts, he must "demonstrate[ ] that his position as a litigant was prejudiced by his denial of access to the court." Eason v. Thaler, 73 F.3d 1322, 1328 (5th Cir.1996) (_per curiam_) (citing Walker v. Navarro County Jail, 4 F.3d 410, 413 (5th Cir.1993)). This requirement that a claimant show "actual injury" is "not satisfied by just any type of frustrated legal claim." Lewis, 518 U.S. at 354. The Supreme

19

Court, discussing the "actual injury" requirement held that: "The tools it requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement. Impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration." *Id.* at 355. The Court further held that this right of access to the courts "does not guarantee inmates the wherewithal to transform themselves into litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims." *Id.*

Plaintiff has not shown that he sustained any actual injury resulting from the restrictions he complained of. Further, the record herein clearly establishes that plaintiff was not inhibited from transmitting and filing pleadings to this Court.

In short, Plaintiff's access to court claim should be dismissed as frivolous.

### Conclusion and Recommendation

Therefore,

**IT IS RECOMMENDED THAT** plaintiff's civil rights complaint alleging excessive force be **DISMISSED WITH PREJUDICE (TO BEING ASSERTED AGAIN UNTIL THE *HECK* CONDITIONS ARE MET)** as frivolous in

accordance with the provisions of 28 U.S.C. §1915(e)(2)(B); and,

IT IS FURTHER RECOMMENDED THAT plaintiff's civil rights complaint alleging the denial of medical care, retaliation, and the right of access to the Courts be **DISMISSED WITH PREJUDICE AS FRIVOLOUS**; and, in light of the foregoing,

IT IS ORDERED THAT plaintiffs **Request for Discovery [Doc. #5]** entitled Memorandum of Points and Authorities be **DENIED**.

Under the provisions of 28 U.S.C. Section 636(b)(1)(C) and Rule 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this report and recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen (14) days after being served with a copy of any objections or response to the district judge at the time of filing.

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error.** *See,* Douglass v. United Services Automobile Association, 79 F.3d 1415

21

(5th Cir.  1996).

In Chambers, Alexandria, Louisiana _May 17_,
2010.


JAMES D. KIRK
UNITED STATES MAGISTRATE JUDGE

22